IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**MARK GRANAS**,                                        Civ. No. 1:21-cv-00116-AA

           Plaintiff,                                **OPINION AND ORDER**

    v.

**UNION PACIFIC RAILROAD
COMPANY**,

           Defendant.

_____

AIKEN, District Judge:

       Plaintiff brought claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and its state equivalent, ORS § 659A.112, against his former employer, Union Pacific Railroad. After a one-week trial, the jury found Union Pacific had violated the ADA and Oregon law. As a result, the jury's award included compensatory damages and an advisory verdict for front pay, back pay, and $25,000,000 in punitive damages. The Court reviewed the jury's advisory verdict and issued a bench opinion finding that the evidence at trial supported the award and entered judgment for Plaintiff. Defendant moves for

judgment as a matter of law and, alternatively, for a new trial. ECF No. 126. For the reasons explained, Defendant's motion is DENIED.

## BACKGROUND

In April 2024, a panel of independent jurors heard evidence from Plaintiff and Union Pacific and found that Union Pacific discriminated against Plaintiff on the basis of his disability and enforced policies that unlawfully screened out individuals like Plaintiff, and that in doing so, Union Pacific acted with malice or reckless indifference towards Plaintiff's rights. The complete factual background of this case, filed in 2021, is well known to the parties. The Court recently issued a 46-page post-trial bench opinion containing legal conclusions based on highly detailed factual findings. Op. and Order, ECF No. 122 ("Op."). The Court incorporates pertinent background here.

Evidence at trial included that Plaintiff dislocated his shoulder while working on his ranch. After a leave of absence that included physical therapy and performing tough construction work, Union Pacific would not let him come back to work due to the type of injury he had sustained. Op. at 13, 17, 38, 37. The jury heard testimony that Plaintiff loved his job at Union Pacific, was eager to return to work, and was physically fit and able to perform the essential functions of his job. *Id*. at 8, 12. But Union Pacific refused to let him come back, based on a policy expert witnesses described as one not grounded in scientific reasoning or based on an individualized assessment of Plaintiff's capabilities. *Id*. at 26–27. The jury unanimously found for

Plaintiff on all claims. Op. at 4–5. The Court declined to depart from the 25-million-dollar award. Op. at 37–40.

## LEGAL STANDARD

I.    Judgment as a Matter of Law – Fed. R. Civ. P. 50(b)

A jury verdict can be overturned and a post-trial motion for judgment as a matter of law granted "only if, under the governing law, there can be but one reasonable conclusion as to the verdict. In other words, the motion should be granted only if 'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'" *Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011) (citing *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir.2001)). In ruling on a motion for judgment as a matter of law, the district court "is not to make credibility determinations or weigh the evidence." *Winarto* 274 F.3d at 1283. The district court "must accept the jury's credibility findings consistent with the verdict." *Id.*

For the motion, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir.2006). The Court must uphold a jury's verdict even if the record contains evidence that might support a contrary conclusion to the jury's verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002). The district court must disregard evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 150–51; *Pavao*, 307 F.3d

at 918; *Winarto*, 274 F.3d at 1283, 1286–87 (district court must "accept the jury's credibility findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day.").

II.    New Trial, Post-Jury Verdict – Fed R. Civ. P. 59(a)(1)(A)

If the movant files a renewed motion for judgment as a matter of law, the movant "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Rule 59(a) states, "A new trial may be granted ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035 (9th Cir.2003). Rather, the court is "bound by those grounds that have been historically recognized." *Id.* Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940).

In the Ninth Circuit, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n.15 (9th Cir. 2000). Determining "the clear

weight of the evidence" is a fact-specific endeavor and is generally upheld on appeal if there is some "reasonable basis" for the jury's verdict. *Mitchell v. Boelcke,* 440 F.3d 300, 305 (6th Cir. 2006); *Collado v. UPS,* 419 F.3d 1143, 1155 (11th Cir. 2005); *Kapelanski v. Johnson,* 390 F.3d 525, 530 (7th Cir. 2004); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 545 (4th Cir.2003); *Colasanto v. Life Ins. Co. of N. Am.,* 100 F.3d 203, 212 (1st Cir. 1996); *Nissim v. McNeil Consumer Prods. Co.,* 957 F.Supp. 600, 602–04 (E.D. Pa. 1997), *aff'd without opinion,* 135 F.3d 765 (3d Cir. 1997).

III.    New Trial Post-Nonjury Verdict – Fed. R. Civ. P. 59(a)(1)(B), (a)(2)

The Ninth Circuit applies different factors for motions for new trial in jury trials as opposed to bench trials. *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 n.4 (9th Cir. 2007). In this case, this was a mixed trial, with the merits and compensatory damages being a matter for the jury to decide, and punitive damages and equitable damages being a decision for the Court. Op. at 6, 36–45.[1] There are three grounds for granting new trials in court-tried actions under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978); *see also Malone v. California State Coll.*, 172 F.3d 57 (9th Cir. 1999) (reaffirming standard).

---

[1]     The Court determined at the pretrial hearing that holding a separate bench trial on punitive and equitable damages with the same witnesses that would appear at the jury trial would be wasteful of limited Court resources. Instead, the Court heard all testimony at trial along with the jury. The jury did not know its award of punitive and equitable damages would be advisory when it rendered its verdict.

IV.    Alterations to Judgment – Fed. R. Civ. P. 59(e)

Rule 59(e), which provides for alterations to a judgment entered by the Court, is generally "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*¸ 342 F.3d 934, 945 (9th Cir. 2003) (internal citations omitted). "A motion for reconsideration under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (citing *Orange St. Partners v. Arnold*, 179 F. 3d 656, 665 (9th Cir. 1999)).

## DISCUSSION

I.    Judgment as a Matter of Law, New Trial on the Merits – Jury Verdict

Union Pacific asserts it is entitled to judgment as a matter of law on "all Plaintiff's claims because no reasonable jury could find that Plaintiff was a qualified individual who could perform the essential functions of his job." Def. Mot. at 3. Union Pacific directs the Court to its terminology that Plaintiff's role at Union Pacific was "a safety sensitive position," that evidence at trial was that a shoulder dislocation is a "traumatic injury," and that Plaintiff had reported continued stiffness after he dislocated it. *Id*. at 3–5. Union Pacific reiterates that, as a matter of policy—the same policy the jury found to be discriminatory—an anterior shoulder dislocation has a 1% chance of recurrence annually that would render a person "suddenly incapacitated." *Id*. at 5. Union Pacific urges now, as it did at trial, that it was looking out for Plaintiff's

safety when it refused to allow him to return to work. *Id*. Union Pacific asserts that its 1% policy is in place to ensure safety and efficiency, not to discriminate. *Id*.

> A.    *"Qualified Individual" Under the ADA and Oregon Law*

To bring a disability discrimination claim under the ADA, "an employee bears the ultimate burden of proving that he is (1) disabled under the Act, (2) a 'qualified individual with a disability,' and (3) discriminated against 'because of' the disability." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (quoting *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). The elements of a disability discrimination claim under O.R.S. § 659A.112 are "identical." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). A "qualified individual" is defined as "an individual" with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "[E]ssential functions" are "fundamental job duties of the employment position," not merely "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1)

Union Pacific argues that the evidence at trial was insufficient to support the jury's finding that Plaintiff was a "qualified individual" able to perform the "essential functions" of his job as a brakeman and conductor. Def. Mot. at 3. Union Pacific cites to evidence at trial that Plaintiff had a serious injury; did not attend all his physical therapy sessions; and did not provide more medical files after he was refused return to work. Def. Mot. at 4–6 (citing Tr. 187, 192–96, 201–04). Union Pacific maintains that Plaintiff's job requires him to go up and down ladders and hold onto grab irons,

and because Plaintiff had suffered a dislocated shoulder, he no longer had the "skill" to do that. *Id.* at 4–5 (citing Tr. 42, 95–96).

Plaintiff responds that the evidence presented at trial supported the jury's conclusion that Plaintiff was qualified under the ADA and Oregon law. Among the evidence at trial was testimony that Plaintiff's medical providers put his shoulder back in place and determined an MRI was not necessary, and that after three months of treatment and physical therapy, Plaintiff's doctor, a shoulder specialist, determined Plaintiff was ready to return to work on trains and climb ladders. Plf. Resp. at 6 (citing Tr. at 65:22–66:4; 182:2–6; 306:5–15; 69:4–7; 379:17–380:2; 384:16–20; 384:21-25). Other evidence at trial included that Plaintiff's treating physician, Dr. Kevin Heaton, believed that there was at least a zero percent chance that Plaintiff would have a recurrence of dislocation, stating that Plaintiff could have a zero to ten percent chance of recurrence dislocation in his lifetime. Tr. 386:19–387:10.

Other testimony from Plaintiff's physical therapist, Ms. Sharryn Jones Smith, was that she did not see any signs that Plaintiff was at risk for re-dislocation and that she believed he would physically be able to do his job. Tr. 161:1–20. Though Plaintiff had difficulty raising his arm strait up, vertically by his ear, Ms. Jones Smith testified that Plaintiff was able to do chest presses, a military press, floor pull-ups, pushups, skull crushers, and use the ab roller, which Mr. Jones Smith described as a very high level of fitness. Tr. at 200:14–25; 168:3–17. Further evidence before the jury was that Plaintiff had been climbing ladders, doing heavy lifting, and performing

construction work while he waited for Union Pacific to let him return to his job. Tr. at 69:11–17.

Here under the governing law, there is more than one reasonable conclusion that can be drawn from the evidence. Viewed the evidence in the light most favorable to the non-moving party, *Reeves* 530 U.S. at 150, the Court must uphold the jury's verdict that Plaintiff was a qualified individual who was able to perform the essential functions of his job. That is so, even if the record contains evidence that might support a contrary conclusion to the jury's verdict. *Pavao,* 307 F.3d at 918. Further, the Court cannot say that the jury's verdict is against the weight of the evidence" "or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co.* 311 U.S. at 251. Union Pacific's motion is denied on this point.[2]

B.    *"Unlawful Screening" under the ADA and Oregon Law*

The ADA prohibits "using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability[.]" 42 U.S.C. § 12112(b)(6). Qualification standards include "medical, safety and other requirements established by [an employer] as requirements [] to be eligible for the position held[.]" 29 C.F.R. § 1630.2(q). An employer may only use said standard, test, or selection criteria if it is shown to be job related and consistent with business necessity. 42 U.S.C. § 1211(b)(6). The business necessity standard is met if the employer "is faced with significant evidence that could cause a reasonable person

---

[2]      Union Pacific also argues that it is entitled to judgment as a matter of law on its "direct threat" defense. However, Plaintiff points out that Defendant failed to raise this defense in its pre-verdict motion under Rule 50(a). The Court finds this to be correct and therefore does not consider arguments on a renewed motion that were not raised at trial.

to inquire as to whether an employee is still capable of performing his job." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (quotation omitted). The employer has the burden of proving that its screening standard satisfies the business necessity defense. *See Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001) (internal citations omitted). "The 'business necessity' standard is quite high, and 'is not [to be] confused with mere expediency.'" *Id.* (quoting *Bentivegna v. United States Dep't of Labor,* 694 F.2d 619, 621-22 (9th Cir. 1982)) (alteration in original). In the Ninth Circuit, the business necessity defense is rarely demonstrated, and courts have "had little occasion to apply [the defense]." *Cripe*, 261 F.3d at 890 (quoting *Yin v. California*, 95 F.3d 864, 868 (9th Cir. 1996)).

Union Pacific argues that it is entitled to judgment as a matter of law on this claim, because its 1% policy was job related and consistent with a business necessity. Def. Mot. at 9. Union Pacific insists that the policy is related to safety, which is related to the job, and necessary for its business. *Id.*

The jury unanimously found that Union Pacific had a screening policy that discriminated against Plaintiff and others like Plaintiff under federal law by imposing selection criteria that screens out, tends to screen out, or has a disparate impact on individuals who disclose disabilities. ECF No. 103 at 2 (question 4). The jury also found that Union Pacific did not prove its "business necessity" defense, for which Union Pacific had the burden of proof at trial. *Id.* (questions 6).

Evidence at trial was that Union Pacific's decision to remove Plaintiff from service permanently was not the result of careful evaluation, but rather the

Page 10 – OPINION AND ORDER

application of a strict policy that automatically disqualified employees with shoulder dislocation. Dr. Charbonneau testified that Plaintiff's restrictions were a foregone conclusion. Trial Tr. 604:5-19 ("If the diagnosis is conformed, yes, he will end up with those restrictions."). To show that its policy is job-related, at trial Union Pacific needed to prove at trial that the blanket policy under which it disqualified Plaintiff "fairly and accurately measures the individual's actual ability to perform the essential functions of the job." *Bates*, 511 F.3d at 996. "When every person excluded by the qualification standard is a member of a protected class–that is, disabled persons–an employer must demonstrate a predictive or significant correlation between the qualification and performance of the job's essential functions." *Id*. "An employer using a business necessity defense must validate the test or exam in question for job-relatedness to the specific skills and physical requirements of the . . . position." *Id*. at 996, n.12; citing *Belk v. Southwestern Bell Tel. Co*., 194 F.3d 946, 951 (8th Cir. 1999).

From the testimony of Plaintiff's treaters, as well as Dr. Kevin Trangle, a reasonable jury could conclude that the blanket rule prohibiting the continued employment of any individual with an anterior shoulder dislocation was arbitrary. Dr. Kevin Trangle explained that Union Pacific could have taken a harder look at Plaintiff, rather than just apply its 1 percent rule. Trial Tr. at 323:1-5. The Court cannot conclude that, under the governing law, there is more than one reasonable conclusion that can be drawn from the evidence. Viewing the evidence in the light most favorable to the non-moving party, *Reeves* 530 U.S. at 150, the Court must

uphold the jury's verdict that Union Pacific had a discriminatory policy. That is so, even if the record contains evidence that might support a contrary conclusion to the jury's verdict. *Pavao,* 307 F.3d at 918. Further, the Court cannot say that the jury's verdict is against the weight of the evidence" "or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co.* 311 U.S. at 251. Union Pacific's motion is denied on this point.

## II.    Punitive Damages – New Trial Based on Nonjury Verdict

Union Pacific maintains that there was no evidence at trial to support an award of punitive damages and asserts that the Court was not authorized to allocate the punitive damages award to Plaintiff's state law claim, especially where state law requires "reckless *and outrageous indifference*," "as opposed to just "reckless indifference." Def. Mot. at 14 (emphasis in original) (citing O.R.S. § 31.730(1), U.S.C. § 1981a(b)(1)).

The Court, however, found "substantial evidence" in the trial court record to support a finding that Union Pacific had sufficient malice, or a reckless and outrageous indifference to a highly unreasonable risk of harm. Op. at 40. After the Court heard evidence at trial about Plaintiff's damages, including testimony relevant to punitive damages, the Court took the matter under advisement and requested briefing on the issue. ECF No. 107 (minute order). The parties provided supplemental briefing, ECF Nos. 116–121. The Court recounted factual evidence it determined was relevant to the issue of punitive damages. Op. at 1–33. The Court set forth its legal conclusion, ultimately determining that Plaintiff was entitled to punitive damages.

*Id*. at 37–44. The Court discussed the state and federal legal standards for awarding punitive damages and found persuasive authority for allocating damages between the state and federal claims to avoid nullifying the loud and clear mandate from the jury's advisory verdict. *Id*. at 44–45. The Court finds no reason to depart from its findings and legal conclusions and adopts the same here. *Id*. And Union Pacific has not pointed to a manifest error of law or fact or newly discovered evidence warranting a new trial under Rule 59(a)(1)(B), or (a)(2). *Brown* 588 F.2d at 710.

III.    Alteration of Judgment – Excessive Verdict

The dual purpose of punitive damages is to punish the defendant and to deter similar conduct in the future. *See TXO Prod. Corp. v. Alliance Resources Corp*, 509 U.S. 443, 461 (1993) (evidence of the wealth of the defendant is proper given the goal of deterrence). Oregon courts recognize that punitive damages may be designed to deter a large corporation or enterprise from future misconduct. *Jane* Doe 130 v. Archdiocese of Portland in Or., 717 F. Supp. 2d 1120, 1140–41 (D. Or. 2010); *Andor v. United Air Lines, Inc.*, 303 Or. 505, 514 (1987). Although the Due Process Clause of the Fourth Amendment prohibits "grossly excessive" punishment for a tortfeasor, a "grossly excessive" award is characterized as one that is arbitrary. *Parrott v. Charr Chevrolet, Inc.¸* 331 Or. 537, 549 (2001); *TXO Productions Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 456 (1993).

Union Pacific asserts that the punitive damages award is excessive and violates the Due Process Clause of the Fifth and Fourteenth Amendment. Def. Mot. at 15. Union Pacific asserts that the Court must consider the guideposts articulated

by the Supreme Court to determine whether the punitive damages award is excessive. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

The Court considered the guideposts, analyzing "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages ... and the civil penalties authorized or imposed in comparable cases." Op. at 42 (citing *State Farm*, 538 U.S. at 418). The Court found that Union Pacific was "reckless and outrageous in its indifference" when it ignored Plaintiff's medical documentation, his own representation about his individual abilities and physical capacity to perform the duties of his job, and his treater's recommendations. *Id.* Further, the testimony at trial established that Union Pacific would refuse to allow Plaintiff to return to work, no matter what, based on its policy excluding anyone from safety-sensitive jobs who had sustained a shoulder dislocation. From Union Pacific's briefing today, that is still the case.

The Court found that the disparity between the actual harm and the award was "not great," considering that Plaintiff had lost out on his livelihood, which was not easily replaceable in the small Klamath Falls community. *Id.* at 43. The Court also determined that, as far as punitive damages awards go, this case was not remarkable, referring to the number of cases Plaintiff had compiled supporting large punitive damages awards. *Id.*

For those reasons, and those cited in its initial opinion, the Court cannot conclude that this is a case warranting alteration of the judgment under Rule 59(e), "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll,* 342 F.3d at 945. This is especially so where Union Pacific has not presented "newly discovered evidence," or a basis showing that the Court "committed clear error," or that there was an "intervening change in the controlling law." *McDowell,* 197 F.3d at 1255.

From the filing of this lawsuit, through each stage of litigation, Plaintiff has met his burden to show that Union Pacific imposes a blanket requirement that employees in certain positions disclose specified health conditions, after which it automatically restricts the employee from working, regardless of whether the employee is physically able to perform the essential functions of their job, as Plaintiff has showed that he could.

## CONCLUSION

For the reasons stated, Union Pacific's Motion for Judgment as a Matter of Law or Motion for New Trial, ECF No. 126, is DENIED.


IT IS SO ORDERED.

Dated this 1st day of December 2025.

_____/s/Ann Aiken_____

Ann Aiken<br>United States District Judge